UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
OLEG SOLOVIEV and OLGA SOLOVIEV,　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiffs,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　　**DECISION AND ORDER**
　　　　-against-　　　　　　　　　　　　　:　　　14-CV-5035 (WFK)
　　　　　　　　　　　　　　　　　　　　　:
MATTHEW GOLDSTEIN, THE CITY　　　　　:
UNIVERSITY OF NEW YORK, COLLEGE OF　:
STATEN ISLAND OF THE CITY UNIVERSITY　:
OF NEW YORK, TOMAS D. MORALES, IRA　　:
PERSKY, JOAN WATERS, FREDERICK　　　　:
SHAFER, KATHLEEN GALVEZ, VERNON　　　:
MUMMERT, and NATIONAL COLLEGIATE　　:
ATHLETIC ASSOCIATION, by and through its　:
President Mark Emmert,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.　　　　　　　　:
-----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 25, 2014, Plaintiffs Oleg Soloviev and Olga Soloviev, husband and wife, (collectively "Plaintiffs") filed a complaint against Matthew Goldstein, Tomás D. Morales, Ira Persky, Joan Waters, Frederick Shafer, Kathleen Galvez, Vernon Mummert (collectively, the "Individual CUNY Defendants"), the City University of New York ("CUNY"), the College of Staten Island of the City University of New York ("CSI") (collectively, the "CUNY Defendants"), and the National Collegiate Athletic Association ("NCAA") arising out of Oleg Soloviev's employment and termination from the position of Aquatics Director and head coach of the men's swim team at CSI. Plaintiffs bring claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Employment Retirement Income Security Act ("ERISA"), 42 U.S.C. § 1983 ("Section 1983"), the Fair Labor Standards Act ("FLSA"), the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL"), the New York Civil Service Law § 75(b), and New York common law for negligence, tortious interference, and breach of contract. Dkt. 20 ("Am. Complaint"). The CUNY Defendants a filed motion to dismiss the complaint against them for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Pro. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6). Dkt. 30 ("CUNY Mot."). The NCAA filed a motion to dismiss the complaint for failure to state a claim against it pursuant to Fed. R. Civ. Pro. 12 (b)(6). Dkt. 32 ("NCAA Mot."). For the reasons set forth below, the CUNY Defendant's motion is GRANTED IN PART and MOOT IN PART and the NCAA's motion is GRANTED in its entirety.

## BACKGROUND

**The Defendants**

CUNY is a public university in New York City. *See* The City University of New York, About, http://www.cuny.edu/about.html (last visited May 4, 2015). Although CSI is one of the senior colleges within the CUNY system, it is not a legally cognizable entity and cannot be sued. *See Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004); *Patterson v. City Univ. of N.Y.*, 12-CV-6300, 2014 WL 3511048, at *1 n.1 (E.D.N.Y. July 14, 2014) (Ross, J.) (citation omitted). As such, CUNY is the proper institutional defendant and CSI is not properly named as defendant. *See Clissuras*, 359 F.3d at 81 n.2. The caption shall be amended to remove CSI as a defendant.

The Individual CUNY Defendants are individuals who currently or used to work for CUNY. CUNY Mot. at 2-3. Matthew Goldstein is the former Chancellor of CUNY. CUNY Mot. at 2. Tomás D. Morales is the former President of CSI. *Id.* Ira Persky is the Vice President of Finance and Administration at CSI. *Id.* Joan Waters is the former Associate General Counsel at CUNY. *Id.* Frederick Schaffer is the General Counsel and Senior Vice Chancellor for Legal Affairs at CUNY. *Id.* Kathleen Galvez is Special Counsel at CSI. *Id.* at 2-3. Vernon Mummert is the former Athletic Director at CSI. *Id.* at 3.

The NCAA is a "voluntary, unincorporated association of approximately 1,100 public and private colleges and universities" in the United States, including CUNY and, by extension, CSI. NCAA Mot. at 3. It is "responsible for promulgating, interpreting, and enforcing bylaws in connection with NCAA membership and competition, including the conduct of member institutions and their athletic department personnel." *Id.*

**The Allegations**

From 1995 until 2011, Oleg Soloviev was the Aquatics Director and head coach of the men's swim team at CSI. CUNY Mot. at 1; NCAA Mot. at 3. Mr. Soloviev is an elderly Russian-American male. Am. Complaint at ¶ 39. On November 17, 2011, CSI fired Mr. Soloviev. CUNY Mot. at 1; NCAA Mot. at 3-4. Mr. Soloviev alleges this was the culmination of a sixteen-year-long campaign of harassment and discrimination against him on the basis of his national origin, race, age, and gender. *See, e.g.*, Am. Complaint at ¶¶ 25, 39, 47, 67, 77, 81, 87, 107.

Mr. Soloviev alleges that the discrimination against him began as soon as he was hired. Specifically, he alleges he was hired as the lowest paid person holding his position, while the more recently hired younger women were paid more. *Id.* at ¶¶ 37-38, 40-44. Mr. Soloviev also alleges many other instance of discrimination, but fails to specify when these events occurred. For example, Mr. Soloviev alleges that at some point or points during his employment he worked 55 hours beyond his 35 hours paid work week and was not compensated for it, and further that he complained about the lack of dehumidifiers at the pool but the problem was not remedied for over eight years. *Id.* at ¶¶ 26-27, 31-32, 35-36. After complaining about the dehumidifiers, Mr. Soloviev alleges he was asked by unidentified staff members when he was going to retire. *Id.* at ¶ 33. Mr. Soloviev also claims he received only one promotion while the other Assistants hired after him received multiple, and that unidentified staff at the pool made derogatory comments such as "oh another Russkee[,]" "[y]ou Russians are taking over everything[,]" and "you Russians get everything handed to them[.]" *Id.* at ¶¶ 44, 61-62. Mr. Soloviev does not allege that he ever complained about any of these instances of discrimination, or any of the below mentioned instances of discrimination, during his employment by CSI. CUNY Mot. at 5.

In 2002, 2004, and 2007, Mr. Soloviev explains that he was invited to coach the USA National Team at the World Championships. *Id.* at ¶ 49. Mr. Soloviev alleges he was discriminated against by being forced to use vacation time to coach the USA National Team even though it was a prestigious position. *Id.* at ¶ 50.

Certain of Mr. Soloviev's allegations also arise out of his involvement with the Blue Arrows Swimming Club Inc. ("Blue Arrows"). *Id.* at ¶¶ 57-58. Mr. and Mrs. Soloviev, who is also a swim coach, own and operate the Blue Arrows. *Id.* Starting in 1999, the Blue Arrows rented the CSI pool. *Id.* at ¶ 59. At some unidentified time after 1999, however, Mr. Soloviev alleges that he was the subject of an investigation regarding conflicts of interest between his duties with Blue Arrows and his duties as Aquatics Director. *Id.* at ¶ 64. Then, in June 2011, Plaintiffs allege the rental fees for the Blue Arrows to use the pool were increased from $17,000 annually to $150,000 annually. *Id.* at ¶ 72. Lastly, in the Fall of 2013, CSI refused to continue to rent the pool to the Blue Arrows at any cost. *Id.* at ¶ 122. Plaintiffs allege all of these actions are based on discrimination against Russian-Americans as the Plaintiffs and most of the children who participate in the Blue Arrows are Russian-American. *Id.* at ¶¶ 60, 63, 80.

At some point prior to Mr. Soloviev's termination, Plaintiffs allege CSI and NCAA began a join investigation into serious recruitment violations. *Id.* at ¶¶ 133-42. On November 17, 2011, Plaintiffs allege Mr. Soloviev was fired for keeping inaccurate timesheet for lifeguards at the CSI pool, for overpaying lifeguards who worked as pool instructors at the same time, for providing nineteen lifeguards with re-certifications for free, and for violating NCAA recruitment policies for student athletes. *Id.* at ¶¶ 68, 101-06, 111, 137. After his termination, Plaintiffs state the NCAA determined that Mr. Soloviev was in fact guilty of illegally recruiting Russian nationals. *Id.* at ¶ 137.

**The Lawsuit**

On December 20, 2011, Mr. Soloviev filed a complaint with the Equal Employment Opportunities Commission ("EEOC") alleging discrimination on the basis of race, national origin, and gender. CUNY Mot. at 5. On January 28, 2012, Mr. Soloviev filed a complaint with the New York State Division of Human Rights, again alleging discrimination on the basis of race, national origin, and gender. *Id.* On July 3, 2014, the EEOC issued Mr. Soloviev a Notice of Right to Sue. *Id.*

On November 21, 2013, the NCAA Division II Committee on Infractions issued its public report in which the Committee found Mr. Soloviev and CSI both violated NCAA rules when recruiting six prospective student-athletes between 2006 and 2011. NCAA Mot. at 4.

On August 25, 2014, Plaintiffs filed their Complaint against the CUNY Defendants and the NCAA ("Defendants"). Dkt. 1 ("Complaint"). On October 24, 2014, Plaintiffs filed their amended complaint against the same Defendants. Am. Complaint.

On March 27, 2015, the CUNY Defendants filed a motion to dismiss the Amended Complaint against them for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Pro. 12 (b)(1) and for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6). CUNY Mot. The CUNY Defendants move to dismiss because (1) most of Plaintiffs' claims against CUNY and against the Individual CUNY Defendants in their official capacities are barred by the Eleventh Amendment; (2) most of Plaintiffs' discrimination claims under Title VII, NYSHRL, and NYCHRL are time barred; (3) Plaintiffs are collaterally estopped from litigating certain claims because they were fully resolved in a prior Article 78 proceeding; (4) all non-time barred claims under Title VII, NYSHRL, and NYCHRL fail to state a claim; and (5) all claims against the

Individual CUNY Defendants in their individual capacities fail to state a claim. CUNY Mot. at 3.

Also on March 27, 2015, the NCAA filed a motion to dismiss the Amended Complaint for failure to state a claim against it pursuant to Fed. R. Civ. Pro. 12 (b)(6). NCAA Mot. The NCAA moves to dismiss because (1) the Amended Complaint fails to show that the NCAA is a state actor under Section 1983, (2) Plaintiffs' "stigma-plus" claim under Section 1983 fails as a matter of law; (3) the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claim; and (4) Plaintiffs' state law allegation against NCAA also fails to state a claim. NCAA Mot. at 6-20.

Plaintiffs contest both the CUNY Defendants' motion and the NCAA motion in their entirety. Dkt. 34 ("Opp."). The Court will address each issue raised by the Defendants in turn.

## DISCUSSION

### I.     Legal Standard

To survive a motion to dismiss under Federal Rules for Civil Procedure Rule 12(b)(6), each claim must set forth sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). In applying this standard, the Court is guided by "[t]wo working principles." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). First, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam) (citations omitted). However, the Court need not credit "legal conclusions" in a claim or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678) (internal quotations and

alteration omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotations omitted).

## II. Analysis

### A. Claims Barred by the Eleventh Amendment as against CUNY

The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. As a result, "[a] State is [] immune from suits in federal court brought by its own citizens and such immunity extends to officers acting on behalf of the State." *Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002) (Spatt, J.) (internal citations omitted). This immunity extends to state agencies as well. *See e.g.*, *Emmons v. City Univ. of N. Y.*, 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010) (Vitaliano, J.).

There are only three exceptions to this rule. "First, a State may waive its Eleventh Amendment defense." *Winokur*, 190 F. Supp. 2d at 448 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)). "Second, Congress may abrogate the sovereign immunity of the States by acting pursuant to a grant of constitutional authority." *Id.* (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000)). "Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when that suit seeks . . . prospective injunctive relief." *Id.* (internal quotation marks omitted) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996)) (italics and ellipsis in original).

"The Second Circuit has decisively held that CUNY and its [] colleges, like [CSI], are 'arms of the state' which are immune from suit under the Eleventh Amendment." *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (Kuntz, J.) (citations omitted). CUNY's immunity from suit under the Eleventh Amendment applies to claims brought under Title I of the ADA, the ADEA, FLSA, and ERISA. *See Deadwiley v. N.Y. State Office of Children & Family Servs.*, 13-CV-1977, 2015 WL 1527631, at *4 (E.D.N.Y. Apr. 2, 2015) (Kuntz, J.) ("[T]he Supreme Court has held that Title I of the ADA is not a valid abrogation of the States' sovereign immunity and thus the Eleventh Amendment bars claims brought under Title I against . . . state agencies.") (internal quotation marks and citation omitted); *Colvin v. State Univ. College at Farmingdale*, 13-CV-3595, 2014 WL 2863224, at *8 (E.D.N.Y. June 19, 2014) (Feuerstein, J.) ("[T]he States' sovereign immunity in the area of age discrimination remains intact.") (internal quotation marks omitted) (citing *Skalafuris v. City of N.Y.*, 444 F. App'x 466, 468 (2d Cir. 2011)); *N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 465-66 (S.D.N.Y. 2014) (Sweet, J.) ("Congress did not, in enacting FLSA, abrogate state sovereign immunity. . . . The State of New York has not consented to be subject to FLSA or otherwise waived its immunity from suits under that statute in federal courts.") (internal citations omitted); *Gengo v. City Univ. of N.Y.*, 07-CV-681, 2010 WL 6372012, at *14 (E.D.N.Y. Dec. 2, 2010) (Azrack, Mag. J.) ("Plaintiff's ERISA claim is barred by the Eleventh Amendment."), *adopted by* 2011 WL 1204716, at *6 (E.D.N.Y. Mar. 29, 2011) (Matsumoto, J.) *aff'd,* 479 F. App'x 382, 383 (2d Cir. 2012). Further, "[i]t is well settled that Congress did not abrogate the States' sovereign immunity by enacting [Section] 1983 and New York has not waived its immunity" with respect to Section 1983 claims. *Nguyen v. Milliken*, 15-CV-587, 2015 WL

1877662, at *3 (E.D.N.Y. Apr. 21, 2015) (Brodie, J.) (internal quotation marks and citations omitted).

In addition, "New York State has not consented to suit under [NYSHRL or NYCHRL]." *Purdie v. City Univ. of N.Y.*, 13-CV-6423, 2015 WL 129552, at *4 (S.D.N.Y. Jan. 8, 2015) (Buchwald, J.) (citations omitted). This is also true for claims under New York Civil Service Law § 75(b) and claims arising under state common law. *See Finch v. New York*, 10-CV-9691, 2012 WL 2866253, at *11 (S.D.N.Y. May 30, 2012) (Briccetti, J.) ("Courts have previously found that Section 75-b does not serve as a waiver of the state's sovereign immunity.") (citing *Fry v. McCall*, 945 F, Supp. 655, 661 (S.D.N.Y. 1996) (Koeltl, J.)); *Purdie*, 2015 WL 129552 at *4 ("Congress has [not] abrogated sovereign immunity . . . with respect to state-law actions that are brought to federal court through supplemental jurisdiction.") (internal citations omitted).

In light of these principles, the ADA, ADEA, ERISA, FLSA, Section 1983, NYSHRL, NYCHRL, New York Civil Service Law § 75(b), and the three New York State common law claims against CUNY are barred by the Eleventh Amendment. The CUNY Defendants' motion to dismiss these claims against CUNY for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Pro 12(b)(1) is therefore GRANTED.

### B. Claims Barred by the Eleventh Amendment Against Individual CUNY Defendants

The Eleventh Amendment analysis as to the Individual CUNY Defendants is slightly different. Plaintiffs argue that the aforementioned claims can survive against the Individual CUNY Defendants because the *Ex parte Young* exception applies. Opp. at 3-6.

Under the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent*

*Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks and citation omitted). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *City of Shelton v. Hughes*, 578 F. App'x 53, 55 (2d Cir. 2014) (internal quotation marks and citations omitted). For example, "[c]laims for reinstatement of previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar." *Colvin*, 2014 WL 2863224 at *10 (internal quotation marks and citations omitted). Plaintiffs claims therefore could fall under the *Ex parte Young* exception.

When a complaint fails to allege either an ongoing violation of federal law or prospective relief that can be granted by the parties sued, however, the complaint fails to meet the basic pleading requirements of the *Ex parte Young* exception. *See City of Shelton*, 578 F. App'x at 55. For example, the *Ex parte Young* "exception to sovereign immunity only authorizes suits against officials with the authority to provide the requested relief." *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (Bianco, J.) (internal citations omitted).

Here, Plaintiffs allege that Mr. Soloviev's termination is an ongoing violation of federal law. *See, e.g.*, Am. Complaint at ¶ 198. Plaintiffs, however, have not alleged that the Individual CUNY Defendants have the responsibility or capacity to provide him with the prospective relief he seeks, *i.e.* to reinstate him. *See Siani*, 7 F. Supp. 3d at 317. Four of the Individual CUNY Defendants (Matthew Goldstein, Tomás D. Morales, Joan Waters, and Vernon Mummert) are former employees of CUNY and therefore have no capacity to reinstate Mr. Soloviev at this time. *See* Am. Complaint at ¶¶ 5, 7, 10, 11. For the other three (Ira Persky, Frederick Schaffer, and Kathleen Galvez), Plaintiffs fail to allege these individuals are in a position to grant Mr.

Soloviev the reinstatement he seeks. *See* Am. Complaint at ¶¶ 6, 8, 9. This is especially true given the NCAA's requirement that any NCAA member institution which seeks to hire Mr. Soloviev before November 20, 2017 must "schedule an appearance before the Committee on Infractions to consider whether the member institution should be subject to the show-cause procedures [mandated by the NCAA Bylaws], which could limit his athletically related duties at the new institution for a designated period." Dkt. 29 ("Conley Dec."), Ex. A at 30.

Accordingly, Plaintiffs' claims under against the ADA, ADEA, ERISA, FLSA, and Section 1983 against the Individual SUNY Defendants in their official capacities do not fall under the *Ex parte Young* exception and so are barred by the Eleventh Amendment. The CUNY Defendants' motion to dismiss the Amended Complaint on this issue is GRANTED.

Further, "[t]he *Young* exception to the principle of sovereign immunity under the Eleventh Amendment is inapplicable to claims against state officials on the basis of state law." *Colvin*, 2014 WL 2863224 at *11 (internal quotation marks and citation omitted). This is also true for claims under city law brought against state officials. *Id.* Accordingly, Plaintiffs' claims under NYSHRL, NYCHRL, New York Civil Service Law § 75(b), and New York common law against the Individual SUNY Defendants in their official capacities are barred by the principle of sovereign immunity under the Eleventh Amendment. The CUNY Defendants' motion to dismiss these claims on this issue is therefore also GRANTED.

## C. Time Barred Discrimination Claims under Title VII, NYSHRL, and NYCHRL

Plaintiffs' Title VII claims against the CUNY Defendants are not barred by the Eleventh Amendment. Neither are Plaintiffs' NYSHRL and NYCHRL claims as against the Individual CUNY Defendants in their individual capacities. The CUNY Defendants, however, argue that

certain of Plaintiffs' specific claims of discrimination under Title VII, NYSHRL, and NYCHRL are time barred. CUNY Mot. at 9-10.

Timeliness is a requirement to bring a claim under Title VII, NYSHRL, and NYCHRL. "An aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." *Flanagan v. N. Shore Long Island Jewish Health Sys.*, 11-CV-5246, 2014 WL 4905124, at *7 (E.D.N.Y. Sept. 30, 2014) (Bianco, J.) (internal quotation marks and citation omitted). "Title VII precludes recovery for *discrete* acts of discrimination . . . that occur outside the statutory time period, irrespective of whether other acts of discrimination occurred within the statutory time period." *Id.* (internal quotation marks omitted) (emphasis and ellipses in original) (citing *Mark v. Brookdale Univ. Hosp. & Med. Ctr.*, 04-CV-2497, 2005 WL 1521185, at *16 (E.D.N.Y. June 22, 2005) (Weinstein, J.)). The statute of limitations for claims under both the NYSHRL and NYCHRL is three years. *See Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 607-08 (S.D.N.Y. 2011) (McMahon, J.).

Mr. Soloviev filed his EEOC complaint on December 20, 2011. Am. Complaint at ¶ 15. Consequently, the operative date for determining the timeliness of Plaintiffs' Title VII claims is February 23, 2011, 300 days before the EEOC filing. The operative date for determining the timeliness of Plaintiffs' NYSHRL and HYCHRL claims against the Individual CUNY Defendants in their individual capacities is December 20, 2008, 3 years before the EEOC filing. As a result, any allegations with respect to Mr. Soloviev's Title VII claims concerning events before February 23, 2011 are time-barred. Any allegations with respect to Mr. Soloviev's NYSHRL and HYCHRL claims concerning events before December 20, 2008 are time-barred. As a result, the only alleged discriminatory acts that are not time barred and on which Plaintiffs

can proceed are: (1) the increase in the Blue Arrows' rental fees in June 2011 (under NYSHRL and NYCHRL only); (2) Mr. Soloviev's termination on November 17, 2011; and (3) CSI's refusal to rent the pool to the Blue Arrows in 2013. Am. Complaint at ¶¶ 68, 72, 101-06, 111, 122, 137. Accordingly, the CUNY Defendants' motion to dismiss on this issue is GRANTED.

### D. Failure to State a Claim under Title VII, NYSHRL, and NYCHRL

The CUNY Defendants next argue Plaintiffs fail to state a claim under Title VII, NYSHRL, and NYCHRL for both discriminatory discharge and retaliation. CUNY Mot. at 12-19. "Because NYSHRL claims are subject to the same standard as Title VII claims, [the Court] will consider them together, except [if] otherwise noted." *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, 13-CV-3038, 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015) (Gleeson, J.) (citations omitted). "NYCHRL claims, on the other hand, are reviewed independently from and more liberally than their federal and state counterparts." *LaSalle v. City of N.Y.*, 13-CV-5109, 2015 WL 1442376, at *3 (S.D.N.Y. Mar. 30, 2015) (Crotty, J.) (internal quotation marks and citation omitted). The Court will begin by addressing the claims under Title VII, NYSHRL, and NYCHRL based on Plaintiffs' allegations of discriminatory treatment of the Blue Arrows. The Court will then discuss the claims based on Plaintiffs' allegations of discriminatory treatment of Mr. Soloviev, first assessing the discriminatory discharge claims under the two standards (Title VII/NYSHRL and NYCHRL) and then the retaliation claims under the two standards.

### 1. Claims under Title VII, NYSHRL, and NYCHRL based on the Blue Arrows

Plaintiffs allege they were discriminated against by the CUNY Defendants when the pool rental fees for the Blue Arrows were increased in June 2011 (under NYSHRL and NYCHRL

only) and when CSI refused to rent the pool to the Blue Arrows in 2013. Am. Complaint at ¶¶ 72, 122.

Title VII, NYSHRL, and NYCHRL provide causes of action for employees against employers only for instances of discrimination that adversely affect an employee's employment. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013) (noting NYCHRL makes it unlawful "to discriminate against [an employee] in compensation or in terms, conditions, or privileges of employment") (internal quotation marks and citation omitted); *Salazar*, 2015 WL 1535698 at \*5 (noting plaintiff must suffer an adverse employment action to state a claim under Title VII and NYSHRL) (internal quotation marks and citations omitted). "A plaintiff [only] suffers an adverse employment action . . . when he or she endures a materially adverse change in the terms, privileges, duration[,] and conditions of employment." *See, e.g., Hernandez v. Int'l Shoppes, LLC*, 13-CV-6615, 2015 WL 1858997, at \*26 (E.D.N.Y. Apr. 23, 2015) (Weinstein, J.) (internal quotation marks and citations omitted).

Here, the increase in pool fees for the Blue Arrows in 2011 and the failure to renew the Blue Arrows' lease in 2013 do not constitute adverse employment actions under Title VII, NYSHRL, or NYCHRL. Both of these actions were unrelated to Mr. Soloviev's employment and did not cause him to suffer any change to the "terms, conditions, or privileges of [his] employment." *Mihalik*, 715 F.3d at 109-10; *Hernandez*, 2015 WL 1858997 at \*26. Therefore, any claims arising out of these incidents are dismissed for failure to state a claim.[1]

---

[1] The CUNY Defendants argue Plaintiffs are collaterally estopped from relitigating all claims on the basis of CSI's refusal to rent the pool to the Blue Arrows in 2013 because the issue was fully resolved in a prior Article 78 proceeding. CUNY Mot. at 10-12. Regardless, this issue is MOOT because the Court finds this action is not related to Plaintiffs' employment and therefore is not actionable under Title VII, NYSHRL, or NYCHRL.

## 2. Discriminatory Discharge with Respect to Mr. Soloviev

### a. Under Title VII and NYSHRL

Plaintiffs allege Mr. Soloviev was discriminated against on the basis of his race, gender, and national origin when he was fired on November 17, 2011. Am. Complaint at ¶¶ 68, 101-06, 111, 137.

"To establish a prima facie case for employment discrimination [under Title VII and NYSHRL], a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Salazar*, 2015 WL 1535698 at *5 (internal quotation marks and citations omitted).

Here, there is no dispute that Mr. Soloviev is a member of a protected class. CUNY Mot. at 13. In addition, Mr. Soloviev's termination was an adverse employment action. *Hernandez*, 2015 WL 1858997 at *26 ("Examples of materials adverse employment actions include termination of employment[.]") (internal quotation marks and citations omitted). Therefore, only the other two elements of the prima facie case, whether Mr. Soloviev was qualified for his position and whether the termination took place under circumstances giving rise to the inference of discrimination, are at issue. Plaintiffs, however, have failed to establish a prima facie case with respect to both of the remaining elements.

Regarding the second element, Mr. Soloviev has failed to allege he was qualified for the position of Aquatics Director and head coach of the men's swim team at CSI at the time he was fired in November 2011. While Plaintiffs have alleged that Mr. Soloviev "performed his assigned duties in an exemplary manner[,]" "exceeded the requirements of his assigned position[,]" and "never received an unsatisfactory performance evaluation[,]" Plaintiffs also

recognize in their Amended Complaint that "[a]lleged NCAA rules violations were a prominent part of the disciplinary charges against [Mr. Soloviev] that le[d] to his wrongful discharge." Am. Complaint at ¶¶ 23, 24, 186. Plaintiffs also admit in the Amended Complaint that the NCAA "found that [Mr. Soloviev] violated NCAA recruitment policies for student athletes" after a joint investigation by CSI and the NCAA which concluded after Mr. Soloviev's termination. *Id.* at ¶ 137. As Mr. Soloviev was accused of violating NCAA bylaws, and these accusations were ultimately found to be based in fact, he was not qualified for the positions he held at the time he was terminated. Thus, Petitioners have failed to state a claim for discriminatory discharge under Title VII and NYSHRL.

Further, regarding the fourth element, "[t]he *sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be *because of [the protected characteristic]*." *Bivens v. Inst. for Cmty. Living, Inc.*, 14-CV-7173, 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) (Engelmayer, J.) (internal quotation marks omitted) (emphases in original) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).

> As the Second Circuit has explained, it is well settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: the employer's criticism of the plaintiff's performance in [] degrading terms [related to the protected characteristic]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of [similarly situated] employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Id.* at *8 (internal quotation marks, ellipses, and citations omitted). Such circumstances can include "actions or remarks made by decisionmakers that could be viewed as reflecting discriminatory animus." *LaSalle v. City of N.Y.*, 13-CV-5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015) (Crotty, J.) (internal quotation marks and citation omitted). "If there is no direct evidence of an employer's discriminatory intent, [p]laintiff then has to show that the

employer treated plaintiff less favorabl[y] than a similarly situated employee outside his protected group but who is similar in all material respects to the individual whom he seeks to compare himself with." *Doroz v. Tect Utica Corp.*, 12-CV-391, 2015 WL 1897134, at *7 (N.D.N.Y. Apr. 27, 2015) (D'Agostino, J.) (internal quotation marks and citations omitted); *see also Campbell v. N.Y. City Transit Auth.*, 11-CV-2827, 2015 WL 1349820, at *14 (E.D.N.Y. Mar. 26, 2015) (Brodie, J.) (citations omitted).

However, "naked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Doe v. Columbia Univ.*, 14-CV-3573, 2015 WL 1840402, at *7 (S.D.N.Y. Apr. 21, 2015) (Furman, J.) (internal ellipses, quotation marks, and citations omitted). "In the absence of any circumstantial evidence of discriminatory animus other than the differential treatment, the inference that the difference in treatment is attributable in part to discrimination would be based on speculation rather than on evidence or a rational inference." *Campbell*, 2015 WL 1349820, at *15 (internal quotation marks and citation omitted). Accordingly, "[a] claim is properly dismissed where the plaintiff fails to plead any facts that would create an inference that any adverse action taken by any defendant was based upon a protected characteristic of the plaintiff." *Bivens*, 2015 WL 1782290 at *7 (internal quotation marks, brackets, and ellipses omitted) (citing *Patane*, 508 F.3d at 112)).

Here, Mr. Soloviev has shown no connection between his termination and his gender, race, or national origin. Rather, he has "done no more than point to various ways in which [he] feels he was mistreated and argue that it must have been because of" his gender, race, and national origin. *See Campbell*, 2015 WL 1349820 at *15 (citation omitted). For example, Plaintiffs' complaint alleges certain younger "American[-]born" female employees of CSI were

paid more than he was as a starting salary. Am. Complaint at ¶¶ 37-44. All of these women, however, were hired "in the last several years," while Mr. Soloviev was hired in 1995. *Id.* at ¶ 38. Further, Plaintiffs' complaint is devoid of allegations regarding these similarly situated employees' supervisors, job specifics, job performance, or conduct. Not only could these salary differences be the result of inflation rather than discrimination, but Plaintiffs have failed to allege that these new hires were similarly situated to Mr. Soloviev in any material way other than starting job title.

Moreover, while Plaintiffs' complaint does allege three specific phrases lobbed at Mr. Soloviev which seem to be discriminatory on the basis of his national origin, Plaintiffs fail to allege that any of the named Individual CUNY Defendants or anyone with control over the decision to fire Mr. Soloviev made those comments. *See* Am. Complaint at ¶¶ 61-62 (alleging staff at the CSI pool made derogatory comments such as "oh another Russkee[,]" "[y]ou Russians are taking over everything[,]" and "you Russians get everything handed to them"). These statements therefore cannot be attributed to CUNY as Mr. Soloviev's employer and so do not form a basis for liability. *See LaSalle*, 2015 WL 1442376 at *2 (noting actions or remarks must be made by decisionmakers to give rise to an inference of discriminatory motive by employer) (citations omitted).

Lastly, the Amended Complaint itself states a basis for Mr. Soloviev's termination that is independent from his race, gender, and national origin – the "[a]lleged NCAA rules violations [which] were a prominent part of the disciplinary charges against [Mr. Soloviev] that le[d] to his wrongful discharge" and the NCAA's subsequent finding "that [Mr. Soloviev] violated NCAA recruitment policies for student athletes" after a joint investigation by CSI and the NCAA. Am. Complaint at ¶¶ 23, 24, 137, 186. While the ultimate finding of violations by Mr. Soloviev was

not made until after his discharge, the serious charges and pendency of the investigation nonetheless differentiate Mr. Soloviev from any individual to whom he could seek to compare himself. Rather than show discriminatory intent, the sequence of events leading to Mr. Soloviev's discharge indicates that his termination was the product of his actions rather than his race, gender, or national origin.

In conclusion, Plaintiffs' complaint fails to state a claim for discriminatory discharge under Title VII or NYSHRL because it fails to allege that Mr. Soloviev was qualified for his job at the time he was fired and further fails to allege that Mr. Soloviev's termination was because of his race, gender, or national origin. Accordingly, the CUNY Defendants' motion to dismiss Plaintiffs' claims under Title VII and NYSHRL on the basis of discriminatory discharge is GRANTED.

### b. Under NYCHRL

Unlike Title VII and NYSHRL claims, "NYCHRL claims . . . are reviewed independently from and more liberally than their federal and state counterparts." *LaSalle*, 2015 WL 1442376 at *3 (internal quotation marks and citation omitted). This means a complaint may fail to state a claim under Title VII and NYSHRL but still be allowed to proceed under NYCHRL.

Nonetheless, a complaint will not always pass muster under NYCHRL's more lenient standard. A complaint must still allege facts on the basis of which a court can find differential treatment – *i.e.* the plaintiff was "treated less well – because of a discriminatory intent." *Mihalik*, 715 F.3d at 110; *LaSalle*, 2015 WL 1442376 at *5-*6 (citations omitted). "[D]istrict courts must be mindful that the NYCHRL is not a general civility code. The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive . . . [*i.e.*] *because of* [the protected

characteristic]." *Mihalik*, 715 F.3d at 110 (internal quotation marks and citations omitted) (emphasis in original).

Plaintiffs have failed to meet even this more liberal burden here. As discussed above, Plaintiffs have failed to allege that Mr. Soloviev's termination was *caused by* a discriminatory motive on the part of his employers on the basis of his race, gender, or national origin, rather than by other actions on the part of Mr. Soloviev. This is a requirement to state a claim under NYCHRL. Accordingly, the CUNY Defendants' motion to dismiss Plaintiffs' claims under NYCHRL on the basis of discriminatory discharge is GRANTED.

### 3. Retaliation with Respect to Mr. Soloviev

#### a. Under Title VII and NYSHRL

"A prima facie case for retaliation [under Title VII and NYSHRL] requires[]: (1) that plaintiff was engaged in a protected activity, (2) that defendants knew of the protected activity, (3) that defendants took adverse employment actions against plaintiff, and (4) a causal connection between the protected activity and the adverse action." *LaSalle*, 2015 WL 1442376 at *6 (internal citations omitted). A plaintiff may demonstrate a causal connection under the fourth element by "(a) indirectly showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly though other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." *Id.* (internal quotation marks and citation omitted).

Plaintiffs allege that Mr. Soloviev was retaliated against by being fired in November 2011 because the Blue Arrows sued CSI and Defendant Morales in August 2011 when CUNY refused to renew the Blue Arrows' license to rent to pool. Am. Complaint at ¶ 75. Specifically, Plaintiffs allege that, after the lawsuit was filed, the CUNY Defendants "single mindedly put a

bulls eye on [Mr. Soloviev's] back and began a witch hunt to rid the CSI pool of any and all Russian influences including" Plaintiffs. *Id.* Mr. Soloviev's termination is thus the adverse employment action alleged under the third prong of the retaliation test.

Defendants argue that Plaintiffs have not pled facts adequate to state a cause of action under any of the other requirements of a prima facie case for retaliation. CUNY Mot. at 16-19.

Under the first element, "[t]he term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012). Such an action can be "informal – an employee does not need to lodge a formal complaint of discrimination." *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 222 (E.D.N.Y. 2014) (Brodie, J.) (internal citations omitted). The complaint, however, must be "directed at conduct prohibited by Title VII [or NYSHRL]." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiffs filed a petition as the Blue Arrows against CUNY on August 16, 2011. Conley Dec. Ex. C. Plaintiffs allege that this petition and lawsuit constituted protected activity. The petition, however, alleges only that CUNY raised the license fees with the intent "to drive the Blue Arrows from the CSI pool" and that the fee increases are "beyond all justification and reason." *Id.* at ¶¶ 23, 26, 28, 46-47. Nowhere in the 2011 petition do Plaintiffs, acting as owners of the Blue Arrows, mention any concern that the increase in the licensing fees is based on Russian-American discrimination, or any other form of discrimination against Plaintiffs. Without any mention of discrimination, the petition cannot constitute an "action taken to protect or oppose statutorily prohibited discrimination." *Wright*, 493 F. App'x at 236. The August 2011 lawsuit is not protected activity. Without an allegation of protected activity, Plaintiffs have not stated a claim for retaliation.

Further, under the second element, nowhere in the complaint do Plaintiffs allege the CUNY Defendants were aware of Plaintiffs being engaged in protected activity. Although, as noted above, complaints of discrimination can be informal "they cannot be so vague or generalized that the employer could not reasonably have understood that the plaintiff[s'] complaint was directed at conduct prohibited by Title VII [and NYSHRL]." *Bowen-Hooks*, 13 F. Supp. 3d at 222 (internal quotation marks and citations). "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff[s'] opposition was directed at conduct prohibited by Title VII [and NYSHRL]." *Sherman v. Cnty. of Suffolk*, 11-CV-2528, 2014 WL 7370033, at *16 (E.D.N.Y. Dec. 29, 2014) (Spatt, J.) (internal quotation marks and citations omitted). In this case, due to the petition's failure to mention discrimination in any way means the CUNY Defendants were not aware that the petition was directed at conduct allegedly prohibited by Title VII and NYSHRL. Without an allegation that the CUNY Defendants knew the filing of the petition by the Blue Arrows in 2011 constituted protected activity, Plaintiffs have not stated a claim for retaliation.

Lastly, under the fourth element, Plaintiffs have not alleged a causal connection between the filing of the petition by the Blue Arrows in August 2011 and Mr. Soloviev's firing in November 2011. In general, "Title VII [and NYSHRL] claims must be proved according to traditional principles of but-for causation, which required proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (internal quotation marks omitted) (citing *Univ. Of Tex. Sw. Med. Ctr. v. Nassar*, 113 S.Ct. 2517, 2533 (2013)). While this "does not alter the plaintiff's ability to demonstrate causation at the prima

facie stage . . . through temporal proximity[,]" a plaintiff can only use temporal proximity if there are no allegations that would otherwise undermine but-for causation. *Id.* Here, although the filing of the petition is sufficiently close in timing to Mr. Soloviev's firing, the but-for standard is not met because there are other reasons, conceded by Plaintiffs, for Mr. Soloviev's firing. Specifically, Plaintiffs acknowledge that Mr. Soloviev was under investigation for serious violations of NCAA bylaws at the time of his firing. Am. Complaint at ¶¶ 23, 24, 137, 186. This wholly undermines any argument that but-for the Blue Arrows petition, Mr. Soloviev would not have been fired.

Accordingly, the CUNY Defendants' motion to dismiss Plaintiffs' claims under Title VII and NYSHRL on the basis of retaliation is GRANTED.

### b. Under NYCHRL

As with claims for discriminatory discharge, the NYCHRL states a more liberal standard for retaliation claims than Title VII and NYSHRL. "[T]he NYCHRL prohibits employers from retaliating or discriminating in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." *Mihalik*, 715 F.3d at 112 (internal quotation marks omitted) (ellipses in original) (citing N.Y.C. Admin. Code § 8-107(7)). "Thus, to prevail on a retaliation claim under the NYCHRL, plaintiff[s] must show [they] took an action opposing [the] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* (internal citations omitted). "The New York Court of Appeals had held that opposing any practice can include situations where a person, before the retaliatory conduct occurred, merely made clear [his] disapproval of the defendant's discrimination by communicating to him, in substance that [he]

thought [the] treatment of the victim was wrong." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiffs argue Mr. Soloviev was terminated in retaliation for the lawsuit the Blue Arrows brought against CUNY in August 2011 after the pool fees were increased. Even under NYCHRL's more liberal standard, however, Plaintiffs have failed to state a claim. There are no facts suggesting the Blue Arrows' petition in August 2011 "made clear [Plaintiffs'] disapproval of the [CUNY Defendants'] discrimination by communicating it to [them], in substance that [they] thought [the] treatment of [Mr. Soloviev] was wrong." *Id.* (internal quotation marks and citations omitted). As discussed above, the lawsuit made no reference to any form of discrimination, either directed at Mr. Soloviev or at anyone else involved in the lawsuit. Conley Dec. Ex. C. Instead, the petition focuses its outrage on the fee increase for the Blue Arrows without any mention of discriminatory motive or intent. *Id.* at ¶¶ 23, 26, 28, 46-47. This is insufficient to state a claim even under NYCHRL's more liberal standard. Accordingly, the CUNY Defendants' motion to dismiss Plaintiffs' claims under NYCHRL on the basis of retaliation is GRANTED.

### E. Failure to State a Claim Against the Individual CUNY Defendants in their Individual Capacities

The CUNY Defendants also argue that Plaintiffs have failed to state various federal and state law claims against the Individual CUNY Defendants in their individual capacities. CUNY Mot. at 19-25.

## 1. Individual Capacity Liability Under Title VII, ADEA, ADA, and ERISA

Plaintiffs sue the Individual CUNY Defendants in their individual capacities under Title VII, the ADEA, ADA, and ERISA. Am. Complaint at ¶¶ 145, 149, 153, 157-58, 175. Title VII, ADA, and ADEA, however, do not provide for individual personal liability. *Walker v. Tulsa*, 14-CV-6976, 2015 WL 1914958, at *2 (E.D.N.Y. Apr. 27, 2015) (Gleeson. J.) (finding neither the ADA nor Title VII provide for individual liability); *Jones-Kahn v. Westbury Bd. Of Educ. – Westbury Union Free Sch. Dist.*, 13-CV-7144, 2015 WL 1529839, at *4 (E.D.N.Y. Mar. 31, 2015) (Seybert, J.) (finding neither Title VII nor the ADEA provide for individual liability) (citations omitted). ERISA, while it can provide for individual liability, does not apply to governmental employee benefit plans. *Gengo*, 2010 WL 6372012 at *14. Accordingly, "[b]ecause CUNY is a public entity, the provisions of ERISA do not apply" to the school or its employees in any capacity. *Id.* Therefore, Plaintiffs' claims under Title VII, the ADEA, ADA, and ERISA against the Individual CUNY Defendants in their individual capacities must be dismissed under Fed. R. Civ. Pro. 12(b)(6).

## 2. Individual Capacity Liability Under NYSHRL and NYCHRL

Plaintiffs argue the Individual CUNY Defendants are liable under NYSHRL and NYCHRL as aiders and abettors. Opp. at 19-21. Under both statutes, however, there is "a requirement that liability must first be established as to the employer/ principal before accessorial liability can be found as to an alleged aider and abettor." *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) (Scheindlin, J.) (citation omitted); *see also Dillon v. Ned Mgmt., Inc.*, 13-CV-2622, 2015 WL 427921, at *12 (E.D.N.Y. Feb. 2, 2015) (Weinstein, J.) (noting that liability must be established as to the employer before it can be extended to aiders

and abettors under NYCHRL) (citations omitted); *Ren Yuan Deng v. N.Y. State Office of Mental Health*, 13-CV-6801, 2015 WL 221046, at *5 (S.D.N.Y. Jan. 15, 2015) (Carter, J.) (noting principal liability is a predicate for aider and abettor liability under both NYSHRL and NYCHRL) (citations omitted). Here, as Plaintiffs cannot state a claim against CUNY under NYSHRL and NYCHRL because the claims are barred by the Eleventh Amendment, Plaintiffs also cannot state a claim against the Individual CUNY Defendants in their individual capacities as aiders and abettors. *See* II.A., *supra*. Accordingly, the CUNY Defendants' motion to dismiss the NYSHRL and NYCHRL claims against the Individual CUNY Defendants in their individual capacities as aiders and abettors is GRANTED.

### 3. Individual Capacity Liability Under Section 1983

Plaintiffs allege a stigma-plus claim under Section 1983. Am. Complaint at ¶¶ 202-215. A stigma-plus claim allows an employee to "invoke the protections of the Due Process Clause where the employee has suffered a loss of reputation coupled with the deprivation of a more tangible interest, such as government employment." *Segal v. City of N.Y.*, 459 F.3d 207, 212 (2d Cir. 2006) (internal quotation marks and citations omitted). Such an action is referred to as a stigma-plus claim because it "involves an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." *Id.* (internal quotation marks and citations omitted).

"[I]n order to bring a successful stigma-plus claim, the plaintiff also must demonstrate that [his] liberty was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma plus claim." *Id.* at 213 (internal citations omitted). Courts in this circuit have repeatedly found that a stigma-plus plaintiff had "an adequate post-deprivation remedy [available] via a proceeding under Article 78." *Attallah v. N.Y. Coll. of Osteopathic*

*Medicine*, 12-CV-6132, 2015 WL 1400530, at *6 (E.D.N.Y. Mar. 27, 2015) (Bianco, J.)
(citations omitted). "Generally speaking, the availability of an Article 78 proceeding bars
seeking relief under Section 1983 when there is an adequate state post-deprivation procedure to
remedy a random or arbitrary deprivation of property or liberty." *Id.* (citation omitted).

Although Plaintiffs did not engage in an Article 78 proceeding against the CUNY
Defendants on the basis of Mr. Soloviev's termination, nowhere do they allege that such a
proceeding was unavailable to them. Further, courts in this circuit have recognized that Article
78 proceedings are available to employees of CUNY who seek to challenge changes in their
employment status. *See, e.g.*, *Rosa v. City Univ. of N.Y.*, 04-CV-9139, 2007 WL 1001416, at *1
(S.D.N.Y. Apr. 2, 2007) (Wood, J.) (discussing Article 78 proceeding filed by CUNY employee
seeking to challenge his suspension without pay); *Naval v. Fernandez*, 97-CV-6800, 1998 WL
938942, at *1 (E.D.N.Y. Nov. 20, 1998) (Dearie, J.) (discussing suit brought by a class of
professors against CUNY under Article 78); *Shecter v. Queensborough Cmty. Coll.*, 87-CV-
5110, 1993 WL 832677, at *2 (S.D.N.Y. Mar. 30, 1993) (Edelstein, J.) (noting Article 78
proceeding brought by assistant professor against CUNY). Accordingly, Plaintiffs should have
sought relief through an Article 78 proceeding. Their failure to do so when one was available
bars their Section 1983 claims against the Individual CUNY Defendants in their individual
capacities. The CUNY Defendants' motion to dismiss on this ground is therefore GRANTED.

### 4. Individual Capacity Liability Under Plaintiffs' State Law Claims

Plaintiffs assert three state law claims against the CUNY Defendants: (1) Negligence; (2)
Tortious Interference; and (3) Breach of Contract. Am. Complaint at ¶¶ 165-70, 178-90, 191-
201. The CUNY Defendants argue that none of these claims can be raised against the Individual
CUNY Defendants in their individual capacities as a matter of law and therefore must be

dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6). CUNY Mot. at 22-25. The Court will address each of the state law claims in turn.

### a. Negligence Claim Must Be Dismissed

Plaintiffs sue the CUNY Defendants for negligent hiring and negligent supervision of CUNY employees. Am. Complaint at ¶¶ 166, 169-70. Under New York law, however, these common law negligence claims against Mr. Soloviev's employer, CUNY, are "precluded by New York Workers' Compensation Law, which provides the exclusive remedy for negligence claims against an employer." *Kelly v. N. Shore-Long Island Health Sys.*, 13-CV-1284, 2014 WL 2863020, at *11 (E.D.N.Y. June 22, 2014) (Seybert, J.) (internal quotation marks and citations omitted); *see also* N.Y. Workers' Comp. Law § 29(6). "The Second Circuit has affirmed dismissals by district courts of negligent supervision, hiring, and retention claims on [the] basis [of the New York Workers' Compensation Law]." *Gomez v. N. Shore Long Island Jewish Health Sys.*, 13-CV-2394, 2014 WL 4373315, at *4 (E.D.N.Y. Sept. 2, 2014) (Feuerstein, J.) (citing *Ferris v. Delta Air Lines, Inc.*, 277 F,3d 128, 137-38 (2d Cir. 2001) and *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)). Accordingly, Plaintiffs' state law negligence claims must be dismissed because they are barred by New York Workers' Compensation Law. The CUNY Defendants' motion on this issue is GRANTED.

### b. Tortious Interference and Breach of Contract Claims Must Be Dismissed

Plaintiffs allege claims of tortious interference and breach of contract based on violations of Mr. Soloviev's Collective Bargaining Agreement ("CBA") with the CUNY Defendants. Am. Complaint at ¶¶ 178-201. Because both of these claims require interpreting the CBA to determine whether the actions taken by the CUNY Defendants in firing Mr. Soloviev violated

the CBA, they are pre-empted by Section 301 of the Labor Management Relations Act of 1947("LMRA"), 29 U.S.C. § 185(a). *See, e.g.*, *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 337 (E.D.N.Y. 2012) (Matsumoto, J.) ("Where, as here, a plaintiff has not identified any source of [his] claimed contract rights other than a [CBA], Plaintiff's [breach of contract] claims must be construed as preempted by LMRA § 301.") (citations omitted); *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 582-84 (E.D.N.Y. 2011) (Mauskopf, J.) (finding state law tortious interference claim based on CBA, and specifically the breach of contract element, preempted by Section 301).

Nonetheless, "a plaintiff may still pursue claims that are otherwise pre-empted by the LMRA if [he] can set forth sufficient facts to allege a so-called 'hybrid' LMRA § 301 claim." *Doyle*, 914 F. Supp. 2d at 337. Hybrid LMRA § 301 claims, however, are subject to a six-month statute of limitations. *Id.* at 338.

Here, Mr. Soloviev was fired on November 17, 2011. Am. Complaint at ¶ 68. The six-month period within which Plaintiffs had to commence a lawsuit under LMRA § 301 started running on November 17, 2011, and closed on May 17, 2012. Plaintiffs did not file the instant action until August 25, 2014, over two years after the six-moth statute of limitations expired. Complaint at 1. Accordingly, Plaintiffs' tortious interference and breach of contract claims are dismissed as preempted by the LMRA. Further, Plaintiffs' putative hybrid LMRA § 301 is untimely and therefore is dismissed with prejudice. *See Doyle*, 914 F. Supp. 2d at 339. The CUNY Defendants' motion to dismiss these state law claims is GRANTED.

## F. Failure to State a Claim Against the NCAA

In addition to their fifteen causes of action against the CUNY Defendants, Plaintiffs also bring two of those causes of action against the NCAA, namely (1) a claim for tortious

interference under New York Law and (2) a Section 1983 claim. Am. Complaint at ¶¶ 181-90; 205-15; *see also* Opp. at 21 (acknowledging there are only two causes of action brought against the NCAA). The Court will discuss each of the causes of action in turn.

### 1. Failure to State a Claim under Section 1983

Plaintiffs allege a stigma-plus claim under Section 1983. Am. Complaint at ¶¶ 202-215. The NCAA argues that Plaintiffs' claim under Section 1983 fails to state a claim and should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6) because (1) Plaintiffs have failed to allege the NCAA is a state actor and (2) Plaintiffs' claim fails as a matter of law. The Court declines to address the question of whether the NCAA is a state actor because the Court finds that Plaintiffs have failed to state a claim under Section 1983 as a matter of law.

As discussed above, *see* II.E.3., *supra*, "in order to bring a successful stigma-plus claim, the plaintiff also must demonstrate that [his] liberty was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma plus claim." *Segal*, 459 F.3d at 213 (internal citations omitted). Courts in this circuit have repeatedly found that a stigma-plus plaintiff had "an adequate post-deprivation remedy [available] via a proceeding under Article 78" and, "[g]enerally speaking, the availability of an Article 78 proceeding bars seeking relief under Section 1983 when there is an adequate state post-deprivation procedure to remedy a random or arbitrary deprivation of property or liberty." *Attallah*, 2015 WL 1400530 at *6 (citations omitted). Plaintiffs should have sought relief through an Article 78 proceeding against the CUNY Defendants and the NCAA. Their failure to do so when such a proceeding was available bars their Section 1983 claims against the NCAA, just as it barred their claims against the Individual CUNY Defendants. Accordingly, the NCAA's motion to dismiss the Section 1983 cause of action in the Amended Complaint is GRANTED.

30

## 2. Failure to State a Claim for Tortious Interference

Plaintiffs allege a claim for tortious interference against the NCAA. However, for the same reasons discussed in II.E.4.b., *supra*, the tortious interference claim against the NCAA is pre-empted by Section 301 of LMRA, 29 U.S.C. § 185(a) and a hybrid LMRA Section 301 claim is untimely. Therefore, the NCAA's motion to dismiss Plaintiffs' this claim is GRANTED.

## CONCLUSION

For the reasons stated herein, the CUNY Defendant's motion is GRANTED IN PART and MOOT IN PART and the NCAA's motion is GRANTED in its entirety. The Court hereby finds Plaintiffs have failed to state a claim under any of their fifteen causes of action. Accordingly, Plaintiffs' Amended Complaint is DISMISSED in its entirety. The Clerk of the Court is respectfully directed to amend the caption to remove CSI as a defendant and to close this case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 12, 2015
Brooklyn, New York